UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                         )
                                               )          Case No. 09-31045-EBB
MACLOVIO C. MARTINEZ                            )
                                               )          Chapter 11
         Debtor.                               )

## CHAPTER 11 PLAN OF REORGANIZATION
## DATED MARCH 4, 2010

Maclovio C. Martinez ("Martinez" or "Debtor"), Debtor and Debtor-in-Possession, hereby proposes, pursuant to Chapter 11, Title 11 of the United States Code, the following Plan of Reorganization.

## ARTICLE I
## INTRODUCTION

The Debtor is an individual who reside at 14642 County Road 4.5, San Acacio, Colorado, Colorado. The Debtor has multiple real estate investments in both the San Luis Valley and in Longmont, Colorado. The Longmont property is 115 acres and entitles the Debtor to receive royalties from oil and gas rights. The Debtor also owns water rights associated with the Longmont property. This Plan provides for the reorganization of the Debtor's financial affairs under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtor will liquidate all of his real estate holdings in the San Luis Valley except his residence. The Debtor will also liquidate the water rights on the Longmont property. The Debtor will transfer the Longmont property to certain creditors to the extent necessary to satisfy their secured claims. The balance of the creditor claims will be paid from the oil and gas royalties. A more complete history of the Debtor, an explanation of this Plan, and a description of the Debtor's financial condition and future business activity is contained in the Disclosure Statement which accompanies this Plan. Reference should be made to the Disclosure Statement by all creditors and parties who intend to cast a ballot for or against this Plan.

## ARTICLE II
## DEFINITIONS

2.01 - <u>Administrative Claim</u> shall mean a Claim for payment of an administrative expense of

a kind specified in §§ 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estate under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2)(A) of the Bankruptcy Code.

2.02 – Allowed Claim shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this case or scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final order.

2.03 - Allowed Secured Claim shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtors has an interest, or which is subject to setoff under Section 553 of the Code, to the extent the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtors' interest in such property or to the extent of the amount subject to such setoff as the case may be.

2.04 - Avoidance Actions means the Debtors' estate's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise subject to equitable subordination under § 510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

2.05 - Claim shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtors in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, natured, unmatured, disputed, undisputed, legal, secured or unsecured.

2.06 - <u>Class</u> shall mean any Class into which Allowed Claims are classified pursuant to Article III.

2.07 - <u>Class 1, 2(a), 2(b), 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, and 14 Claims and Interests</u> shall mean the Allowed Claims and Interests so classified in Article III.

2.08 - <u>Code</u> shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

2.09 - <u>Confirmation Date</u> shall mean the date upon which the Order of Confirmation is entered by the Court.

2.10 - <u>Court</u> shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case, pursuant to which this Plan is proposed, is pending and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

2.11 - <u>Creditor Account</u> shall mean that segregated account referenced and established pursuant to the terms of this Plan, into which the Debtor will deposit the Oil and Gas Royalties. The account will be maintained at a Federally insured banking institution and the account shall be maintained within the insurance limit of the institution.

2.12 - <u>Debtor</u> shall mean the Debtor who is proposing this Chapter 11 Plan.

2.13 - <u>Disclosure Statement</u> shall mean the Disclosure Statement which is approved by the Court according to 11 U.S.C. § 1125 to be utilized to solicit votes for this Plan.

2.14 - <u>Disputed Claim</u> means any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with this case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

2.15 - <u>Effective Date of the Plan</u> shall mean the date on which the Order of Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

2.16 - <u>Final Order</u> shall mean an order or judgment of the Bankruptcy Court which shall not have been reversed, stayed, modified or amended and as to which (a) at the time to appeal from or to seek review, rehearing or certiorari shall have expired and (b) no appeal or petition for review, rehearing or certiorari is pending or if appealed shall have been affirmed, or the appeal dismissed by the highest court to which such order was appealed, or if review, rehearing or certiorari was sought, such review, rehearing or certiorari has been denied and nor further hearing, appeal or petition for

review, rehearing or certiorari can be taken or granted or as to which any right to appeal or to seek a review, rehearing or certiorari has been waived.

2.17 - Interest shall mean any share of common stock or any other instrument evidencing any ownership interest in the Debtor and any option, warrant or right of any nature, contractual or otherwise, to acquire common stock or an ownership interest in the Debtor.

2.18 – KMB Carve Out shall mean the greater of 10% or $1,500 of the Oil and Gas Royalties, which shall be paid to Kutner Miller Brinen, P.C. for its legal fees through confirmation of this Plan.

2.19 – Oil and Gas Royalties shall mean the oil and gas royalties the Debtor receives on account of his interest in the real property located at 12632 East Frontage Road, Longmont, Colorado, 80504.

2.20 - Order of Confirmation shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

2.21 - Petition Date shall mean the date on which the Debtor's order for relief entered.

2.22 - Plan shall mean this Chapter 11 Plan, and any amendment thereto in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced.

2.23 - Priority Claim means any pre-petition Claim entitled to a priority in payment under § 507(a) of the Bankruptcy Code, but shall not include any Administrative Claim or Tax Claims.

2.24 - Pro Rata shall mean the ratio of an Allowed Claim or Interest in a particular Class to the aggregate amount of all Allowed Claims or Interests in that Class.

2.25 - Professional Fees means the Administrative Claims for compensation and reimbursement submitted pursuant to §§ 330, 331 and 503(b) of the Bankruptcy Code by a Professional Person.

2.26 - Rules shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

2.27 - Tax Claims means any Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

2.28 - Unclassified Priority Claims shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims Allowed under Section 503(b) of the Code and any fees and charges against the estates under Chapter 123 of Title 28 of the United States Code and shall further mean

Allowed unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

2.29 - Other Definitions. Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein.

# ARTICLE III

## DESIGNATION OF CLAIMS AND INTERESTS

The following is a designation of all classes of Claims and Interests other than those Claims of a kind specified in Sections 507(a)(2), 507(a)(3) or 507(a)(8) of the Code.

Class 1 - All Allowed unsecured Claims specified in Section 507(a)(4), 507(a)(5) or 507(a)(6) of the Code as having priority.

Class 2(a) - The Allowed Secured Claim of Capfinancial Properties CV2, LLC on account of the mortgage or deed of trust encumbering the 12632 E. Frontage Road, Longmont Colorado property.

Class (2)(b) - The Allowed Secured Claim of Capfinancial Properties CV2, LLC on account of the mortgage or deed of trust encumbering the 3625 County Road 21, San Luis, CO 81152 property.

Class 3 – The Allowed Secured Claim of Guadalupe Parish Credit Union on account of the mortgage or deed of trust encumbering the 401-3 7th Street, San Luis, CO 81152 property.

Class 4 - The Allowed Secured Claim of U.S. Bancorp Equipment Finance, Inc. on account of its judgment lien encumbering all of the Debtor's real property interests.

Class 5 - The Allowed Secured Claim of Mountain Cement Company on account of the judgment lien encumbering the 12632 E. Frontage Road, Longmont Colorado property.

Class 6 - The Allowed Secured Claim of Cemex, Inc. on account of the judgment lien encumbering the 12632 E. Frontage Road, Longmont Colorado property.

Class 7 –The Allowed Secured Claim of Aggregate Industries, Inc. on account of the judgment lien encumbering the 12632 E. Frontage Road, Longmont Colorado property..

Class 8 – The Secured Claim of American Pride Co-op, Inc. on account of the judgment lien encumbering the 12632 E. Frontage Road, Longmont Colorado property.

Class 9 – The Secured Claim of Fernando Martinez on account of the deed of trust

encumbering the 12632 E. Frontage Road, Longmont Colorado property.

Class 10 - The Secured Claim of Francisco Martinez on account of the deed of trust encumbering the 12632 E. Frontage Road, Longmont Colorado property.

Class 11 - The Secured Claim of Natalia Lorena Infante on account of the deed of trust encumbering the 12632 E. Frontage Road, Longmont Colorado property.

Class 12 - The Secured Claim of Franscona, Joinder, Goodman & Greenstein on account of the deed of trust encumbering the 12632 E. Frontage Road, Longmont Colorado property.

Class 13 - All Allowed unsecured Claims, other than priority claims.

Class 14 –The Interests held by the Debtor in his property.

# ARTICLE IV
## SPECIFICATION AND TREATMENT OF UNCLASSIFIED
## PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Code, the Claims against the Debtor covered in this Article IV are not classified. The holders of such Allowed Claims are not entitled to vote on the Plan.

4.1 - The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, Administrative Claims, shall receive cash equal to the Allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Claims shall be paid in full on the Effective Date of the Plan, or, if agreed to by the claim holder, in full from the Creditor Account established pursuant to paragraphs 7.1 and 9.2 of this Plan or treated as otherwise agreed to by the particular holders of such Claims. Section 507(a)(2) Administrative Claims that are Allowed by the Court after the Effective Date of the Plan shall be paid upon Allowance.

4.2 – The Allowed Claims of a type specified in Section 507(a)(8) of the Code, Tax Claims of governmental taxing authorities, shall be paid on the Effective Date of the Plan.

4.3 - The Debtor will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed.  All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date of the Plan, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed.

## ARTICLE V

## SPECIFICATION AND TREATMENT OF CLASS 1 CLAIM

5.1 - The Allowed Class 1 Priority Claims shall be paid in full on the Effective Date of the Plan.  The Class 1 Claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4), 507(a)(5), and 507(a)(6) of the Code.

## ARTICLE VI

## SPECIFICATION AND TREATMENT OF  SECURED CREDITOR CLAIMS

6.1 – **Capfinancial Properties CV2, LLC.**  Class 2(a) consists of the Allowed Secured Claim of Capfinancial Properties CV2, LLC on account of the first mortgage or deed of trust encumbering the 12632 E. Frontage Road, Longmont Colorado property.  The Class 2(a) claim will be treated under this Plan as follows:

a.    The Class 2(a) claim will be paid first from the following sources:

i. from all money being held in escrow with respect to the Debtor's loans with    Capfinancial Properties CV2, LLC.

ii. All money being held by Kerr McGee Oil and Gas Onshore LP, or any other related or successor entity, with respect to the Oil and Gas Royalties.

iii. To the extent a willing buyer is identified, the liquidation of any water rights, including stocks, held by the Debtor with respect to the 12632 E. Frontage Road, Longmont Colorado property.

b.    To the extent the preceding does not satisfy the Class 2(a) Claim, Capfinancial Properties CV2, LLC shall be paid, in the order of its priority

(first), from the Oil and Gas Royalties until the Class 2(a) Claim is paid in full.

c.    The Class 2(a) claim will bear interest at the rate of: (i) 6% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 2(a) claimant objects to such rate in writing and serves a copy of such objection on the Debtors at least fifteen (15) days prior to the commencement of the confirmation hearing, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by Debtor and the Class 2(a) claimant.

c.    All other provisions of the loan documents pertaining to the Class 2(a) Claim shall remain unaltered by this Plan.

d.    The Class 2(a) claimant will retain all liens that secured its claim as of the Petition Date.

**6.2 – Capfinancial Properties CV2, LLC.** Class 2(b) consists of the Allowed Secured Claim of Capfinancial Properties CV2, LLC on account of the second mortgage or deed of trust encumbering the 3625 County Road 21, San Luis, CO 81152 property. The Class 2(b) claim will be treated under this Plan as follows:

a.    The 3625 County Road 21, San Luis, CO 81152 property shall be liquidated. The proceeds from the liquidation shall be distributed to secured creditors in the order of their priority. After senior lien holders are paid, the Class 2(b) Claim will be satisfied from the liquidation of the property to the extent proceeds are available. Any unpaid portion of the Class 2(b) Claim shall be treated as a Class 13 general unsecured claim.

b.    If the 3625 County Road 21, San Luis, CO 81152 property is not sold within two years of the Effective Date of the Plan, the property shall be surrendered to the first priority lien holder.

**6.3 – Guadalupe Parish Credit Union.** Class 3 consists of the Allowed Secured Claim of Guadalupe Parish Credit Union on account of the first mortgage or deed of trust encumbering the 401-3 7th Street, San Luis, CO 81152 property. The Class 3 claim will be treated under this Plan as follows:

a.    The 401-3 7th Street, San Luis, CO 81152 property shall be liquidated. The proceeds from the liquidation shall be distributed to secured creditors in the order of their priority. The Class 3 Claim will be satisfied from the liquidation of the property to the extent proceeds are available. Any unpaid portion of the Class 3 Claim shall be treated as a Class 13 general unsecured claim.

**6.4 – U.S. Bancorp Equipment Finance, Inc..** Class 4 consists of the Secured Claim of U.S. Bancorp Equipment Finance, Inc. on account of the judgment lien encumbering all of the Debtor's real property interests. The Class 4 Claim will be treated under this Plan as follows:

a.    The Class 4 Claim shall be satisfied from the liquidation of all of the Debtor's real property, to the extent a willing buyer can be identified, except for the 12632 E. Frontage Road, Longmont Colorado property and the 14642 County Road 4.5, San Acacio, Colorado property (the "Sale Properties").

b.    To the extent the preceding does not satisfy the Class 4 Claim, U.S. Bancorp Equipment Finance, Inc. shall be paid, in the order of its priority (second), from the Oil and Gas Royalties, less the KMB Carve Out, until the Class 4 Claim is paid in full.

c.    The Class 4 claim will bear interest at the rate of: (i) 6% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 4 claimant objects to such rate in writing and serves a copy of such objection on the Debtors at least fifteen (15) days prior to the commencement of the confirmation hearing, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by Debtors and the Class 4 claimant.

b.    If the Sale Properties are not sold within two years of the Effective Date of the Plan, the properties shall be surrendered to the first priority lien holder.

**6.5 - Mountain Cement Company.** Class 5 consists of the Allowed Secured Claim of Mountain Cement Company encumbering the 12632 E. Frontage Road, Longmont Colorado property. The Class 5 claim will be treated under this Plan as follows:

     a.       Upon satisfaction of the Class 2(a) and 4 Claims, the Class 5 Claim shall be satisfied by the transfer of the 12632 E. Frontage Road, Longmont Colorado property in accordance with the provisions of paragraph 19.00 of the Settlement Agreement attached hereto as Exhibit A.

     b.       Any unpaid portion of the Class 5 Claim shall be treated as a Class 13 general unsecured claim.

6.6 – **Cemex, Inc.** Class 6 consists of the Allowed Secured Claim of Cemex, Inc. encumbering the 12632 E. Frontage Road, Longmont Colorado property.  The Class 6 claim will be treated under this Plan as follows:

     a.       Upon satisfaction of the Class 2(a) and 4 Claims, the Class 6 Claim shall be satisfied by the transfer of the 12632 E. Frontage Road, Longmont Colorado property in accordance with the provisions of paragraph 19.00 of the Settlement Agreement attached hereto as Exhibit A.

     b.       Any unpaid portion of the Class 6 Claim shall be treated as a Class 13 general unsecured claim.

6.7 – **Aggregate Industries, Inc.** Class 7 consists of the Allowed Secured Claim of Aggrergate Industries, Inc. encumbering the 12632 E. Frontage Road, Longmont Colorado property. The Class 7 claim will be treated under this Plan as follows:

     a.       Upon satisfaction of the Class 2(a) and 4 Claims, the Class 7 Claim shall be satisfied by the transfer of the 12632 E. Frontage Road, Longmont Colorado property in accordance with the provisions of paragraph 19.00 of the Settlement Agreement attached hereto as Exhibit A.

     b.       Any unpaid portion of the Class 5 Claim shall be treated as a Class 13 general unsecured claim.

6.8 – **American Pride Co-op, Inc.** Class 8 consists of the Secured Claim of American Pride Co-op, Inc. encumbering the 12632 E. Frontage Road, Longmont Colorado property.  The Class 8 claim will be treated under this Plan as follows:

     a.       Upon satisfaction of the Class 2(a) and 4 Claims, the Class 8 Claim shall be satisfied by the transfer of the 12632 E. Frontage Road, Longmont Colorado property in accordance with the provisions of paragraph 19.00 of the Settlement Agreement attached hereto as Exhibit A.

b.    Any unpaid portion of the Class 8 Claim shall be treated as a Class 13 general unsecured claim..

6.9 – **Fernando Martinez.** Class 9 consists of the Secured Claim of Fernando Martinez on account of a deed of trust encumbering the 12632 E. Frontage Road, Longmont Colorado property. The deed of trust shall be released in accordance with the statement of Fernando Martinez attached hereto as Exhibit B.  Fernando Martinez shall not hold a claim against the Debtor's estate.

6.10 – **Francisco Martinez.** Class 10 consists of the Secured Claim of Francisco Martinez on account of a deed of trust encumbering the 12632 E. Frontage Road, Longmont Colorado property. The deed of trust shall be released in accordance with the statement of Francisco Martinez attached hereto as Exhibit C.  Francisco Martinez shall not hold a claim against the Debtor's estate.

6.11 - **Natalia Lorena Infante** – Class 11 consists of Secured Claim of Natalia Lorena Infante on account of the deed of trust encumbering the 12632 E. Frontage Road, Longmont Colorado property.  The deed of trust shall be released upon the Effective Date of the Plan.  In consideration for release of the deed of trustee, Ms. Infante shall receive a 15% ownership interest in the Oil and Gas Royalties after satisfaction of the Class 2(a) and Class 4 Allowed Secured Claims. The Debtor may file this Plan as evidence of the release of the deed of trust.

6.12 - **Franscona, Joinder, Goodman & Greenstein** – Class 12 consists of the Secured Claim of Franscona, Joinder, Goodman & Greenstein on account of the deed of trust encumbering the 12632 E. Frontage Road, Longmont Colorado property. The Class 12 claim will be treated under this Plan as follows:

a.    The deed of trust held by shall be released Franscona, Joinder, Goodman & Greenstein upon the Effective Date of the Plan. The Debtor may file this Plan as evidence of the release of the deed of trust.

b.  In consideration for release of the deed of trust, Franscona, Joinder, Goodman & Greenstein shall receive 3 months of payments from the Debtor's interest in the Oil and Gas Royalties, less the KMB Carve Out.

c.  Any unpaid portion of the Class 8 Claim shall be treated as a Class 13 general unsecured claim.

# ARTICLE VII

## SPECIFICATION AND TREATMENT OF UNSECURED CREDITOR CLAIMS

7.1 - Class 13 consists of the Allowed Claims of general unsecured creditors.  Class 13 claimants will be paid the payments set forth herein.  Commencing with the month following satisfaction of the Class 2(a), 4, and 11 Claims in accordance with the provisions set forth above, and continuing for each successive month until Unclassified Priority Claims and then for an additional twelve months, the Debtor will deposit the proceeds he receives on account of his interest in the Oil and Gas Royalties into a segregated account.  The Debtor will deposit the Oil and Gas Proceeds into the Creditor Account within fifteen (15) days of the end of the month for which the deposit pertains. Each time two monthly deposits have been made to Unsecured Creditor Account, the Debtor shall make a distribution to Unclassified Priority Claim holders until paid in full and then to Class 13 on a pro-rata basis, within ten (10) days of making the second deposit.

7.2 – All funds recovered by the Debtor or creditors on account of Avoidance Actions shall be distributed to Class 13 on a pro-rata basis, net of attorneys fees and costs.   Whether or not the Debtor pursues any Avoidance Actions shall be up to the Debtors and the decision to pursue such claims shall be discretionary with the Debtors.

# ARTICLE VIII

## SPECIFICATION AND TREATMENT OF CLASS 6 INTERESTS

8.1 - Class 13 consists of the Interests of the Debtor in his personal property.  Class 13 is unimpaired by the Plan.

# ARTICLE IX

## MEANS FOR THE PLAN'S EXECUTION

9.1 – **Plan Funding**.  The Debtor shall be empowered to take such action as may be necessary to perform his obligations under the Plan.  The Debtor shall take all necessary action to serve the oil and gas interests from the Longmont property.

9.2 –**Creditor Account.** On the Effective Date of the Plan, the Debtor will open a separate interest bearing deposit account at a Federally insured commercial bank selected by the Debtor.  The bank account will be maintained by the Debtor as the Creditor Account into which all payments

made by the Debtor for the benefit of the Class 2(a), 4, 11, Unclassified Priority Claimants and the Class 13 creditors will be made until the term of the Plan is completed.

9.3 - **Disputed Claim Procedure**. Distributions to any class of creditor will only be made on account of Allowed Claims. In the event that distributions are made at a time that a claim objection is pending before the Court or a judgment has entered to establish a Claim and the judgment is not subject to a Final Order, the portion of the distribution that would be paid to the disputed claimant will be held by the Debtor in an interest bearing bank account until the Claim is Allowed or disallowed. If Allowed, the Claim will be paid its appropriate share of the withheld payment with interest. If disallowed, the withheld distribution will be paid on a Pro Rata basis to the remaining Allowed claimants.

9.4 - **Claims and Litigation Bar Date**. All Claim objections and Avoidance Actions in the case must be filed no later than 90 days following the Effective Date of the Plan.

9.5 - **Administrative Expense Bar Date**. All applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within 45 days following the Effective Date of the Plan.

9.6 - **Monthly Installments.** Whenever the Plan provides for payment in monthly installments or a payment due in a certain month, the payment shall be due on the last day of the calendar month in which the payment is due, unless otherwise specified in the Plan. The Debtor shall then have a ten day grace period within which the monthly payment must be received by the payee before the Debtor shall be in default.

9.7 - **Final Decree.** The Debtor will request entry of a final decree closing the case on or before the later of the date all Claim objections and any pending litigation is concluded or 180 days after the Effective Date of the Plan.

9.8 - **Quarterly Fees.** Prior to the entry of the final decree, the Debtor shall continue to remit quarterly fees and post-confirmation reports to the United States Trustee, as required by statute.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1 - On the Effective Date of the Plan, the Debtor does hereby assume those executory contracts and unexpired leases listed in Exhibit D attached hereto and incorporated herein by reference, which have not been assumed by prior Order of the Court prior to the Confirmation Date.

On the date of the entry of an Order confirming the Plan, the Debtor shall be the holder of all right, title and interest to the assumed leases and contracts and such assumed leases and contracts shall be in full effect and binding upon the Debtor and the respective lessees. Confirmation of the Plan shall constitute a determination that the payments to be made to said creditors pursuant to the Plan satisfy all conditions precedent to assumption set forth in 11 U.S.C. § 365(b).

10.2 - On the Effective Date of the Plan, the Debtor will reject all executory contracts and unexpired leases to which it is a party which are listed in Exhibit E, attached hereto and incorporated herein by reference which have not been rejected by prior Order of the Bankruptcy Court prior to the date of confirmation. Executory contracts and unexpired leases will be rejected pursuant to the provisions of 11 U.S.C. § 365. In addition, any executory contract not assumed in accordance with the Plan shall be rejected.

10.3 - An Order confirming this Plan constitutes approval by the Court of the assumption or rejection of the executory contracts and unexpired leases described herein in accordance with the provisions of 11 U.S.C. § 365 and the Rules.

10.4 - Claims Arising from Rejection. All proofs of claim with respect to claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Bankruptcy Court within twenty (20) days after the earlier of (i) the date of the Bankruptcy Court order approving the Debtor's rejection of such executory contract or unexpired lease or (ii) the Confirmation Date. Any claims not filed within such time shall be forever barred against the Debtor, his estate and property and any such Claims shall be disallowed in full. Claims arising from such rejection, to the extent Allowed, shall be treated as Class 13 unsecured Claims.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1 - Revestment. The entry of an Order confirming this Plan shall revest in the Debtor all property of the estate free and clear of all liens except those specifically set forth in the Plan.

11.2 - Retention of Jurisdiction. Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

1.   Determination of the allowability of claims upon objection to such claims by the Debtor-in-Possession or by any other party in interest;

14

2.      Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(1), including compensation of the parties entitled thereto;

3.      Resolution of any disputes regarding interpretation of the Plan;

4.      Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

5.      Modification of the Plan pursuant to 11 U.S.C. § 1127;

6.      Adjudication of any causes of action, including avoiding powers actions, brought by the Debtor-in-Possession, by the representative of the estate or by a Trustee appointed pursuant to the Code;

7.      Adjudication of any cause of action brought by the Debtor-in-Possession, by the representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in 11 U.S.C. § 542-549. This section shall not be construed to limit any other power or right which the Debtors may possess under any section of the Code; and

8.      Entry of a final decree.

11.3 - **Satisfaction of Claims.** The Jacksons shall receive a discharge pursuant to Section 1141(d). Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan. Any obligation or note, previously in default, so modified, shall be cured as modified as of the Confirmation Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.4 - **Headings.** The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan.

11.5 - **Notices.** All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified. All communications will be deemed delivered when received at the following addresses:

a.      To Debtor:

Maclovio Martinez
14642 County Road 4.5

San Acacio, Colorado

With a copy to:

Aaron A. Garber, Esq.
Kutner Miller Brinen, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Fax: 303-832-1510
Email:aag@kutnerlaw.com

b.   To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, other, at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

11.6 - **Successors and Assigns**.  The Plan will be binding upon the Debtor, any creditor affected by the Plan and its heirs, successors, assigns and legal representatives.

11.7 - **Unclaimed Payments**.  If a person or entity entitled to receive a payment or distribution pursuant to this Plan fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 11.5, within one (1) year of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

11.8 - **Committee Termination**.  On the Effective Date of the Plan, any Committee which may have been appointed in the bankruptcy case shall terminate.

11.9 – **Enforceability of Plan**.  Once the Confirmation Order is entered, the Plan shall constitute the surviving contract and obligation of the Debtor.  The obligations of the Debtor to his creditors under the Plan are contractual in nature.  The Plan will constitute a contractual obligation and agreement of the Debtor with his creditors and may be enforced as such.  The Plan shall supersede the Disclosure Statement and if any conflict exists between the Plan and the Disclosure Statement, the Plan shall govern.  Upon confirmation, the Plan shall supersede the Disclosure Statement and shall be the governing document by and between the Debtor and his creditors who are treated and provided for under the Plan.

11.10 – **Contractual Relationship**.  The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtors and their creditors.  In the event of a default by the Debtor under the Plan, creditors shall be entitled to enforce all rights and remedies against the

Debtor for breach of contract under the Plan. Any secured creditor claiming a breach of the Plan by the Debtor will be able to enforce all of their rights and remedies including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document. Any creditor claiming a breach by the Debtor must provide written notice to the Debtor of the claimed default, the notice must provide the Debtor a ten (10) day period within which to cure the claimed default. Upon the Debtor's failure to cure the default within such ten (10) day period, the creditor may proceed to exercise their rights and remedies.

## ARTICLE XII

## CONFIRMATION REQUEST

12.1 - The Debtor, as proponents of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. § 1129. The Debtor will solicit acceptance of the Plan after their Disclosure Statement has been approved by the Court and is transmitted to the creditors, interest holders and parties in interest. In the event the Debtor does not obtain the necessary acceptances of his Plan, they may make application to the Court for confirmation of the Plan pursuant to 11 U.S.C. § 1129(b). The Court may confirm the Plan if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired and has not voted to accept the Plan.

DATED: March 4, 2010

DEBTOR:

By: _Maclovio C. Martinez_
Maclovio C. Martinez

Aaron A. Garber, Esq.

Kutner Miller Brinen, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Telephone: 303- 832-2400
Fax: 303-832-1510
Email: lmk@kutnerlaw.com

ATTORNEYS FOR MACLOVIO C. MARTINEZ
DEBTOR AND DEBTOR-IN-POSSESSION

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 4, 2010, I served by prepaid first class mail a copy of the foregoing **CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 4, 2010** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:

Leo Weiss, Esq.
United States Trustee's Office
999 18th Street
Suite 1551
Denver, CO 80202

Maclovio C. Martinez
12632 East Frontage Road
Longmont, CO 80504

Richard D. Beller, Esq.
Ringenberg, Funk & Beller, P.C.
215 West Oak Street
10th Floor
Fort Collins, CO 80521

William G. Horlbeck, Esq.
216 Sixteenth Street
Suite 1210
Denver, CO 80202

David von Gunten, Esq.
Von Gunten Law, LLC
2696 South Colorado Blvd.
Suite 302
Denver, CO 80222

Paul Urtz, Esq.
1660 Lincoln Street
Suite 2850
Denver, CO 80264

Aaron J. Conrardy, Esq.
13111 East Briarwood Avenue
Suite 340
Englewood, CO 80112

Vicky Martina

# SETTLEMENT AGREEMENT

This Confidential Settlement Agreement (the "Settlement Agreement") is entered into as of March ⟋⟋, 2003, by and among the following creditors (hereinafter collectively referred to as the "Four Large Creditors"):

### Chart Identifying Liability

| | A | B | C |
|---|---|---|---|
| | Name of Creditor: | Counsel for Creditor: | Identification of Liability: |
| 1 | Mountain Cement Company Bruce Ballinger, President Mountain Cement Company 5 Sand Creek Road Laramie, WY 82070 307-745-4879 307-742-4534 | Philip A. Nicholas Anthony, Nicholas, Tangeman & Yates, LLC 170 No. 5th PO Box 928 Laramie, WY 82070-0928 307-742-7140 307-742-7160 Fax | Obligations due for purchase of cement, the claim for which is the subject of Civil No. 01 CV 840, filed in Weld County District Court, Division 1. |
| 2 | Cemex, Inc.[ formerly Southdown, Inc.] Keith D. Nicholson 1200 Smith St., Suite 2400 Houston, TX 77002 | John McDermott Holme, Roberts & Owen, LLP 1700 Lincoln Street, Suite 4100 Denver, CO 303-861-7000 general 303-866-0200 Fax | Obligations due for purchase of cement, the claim for which is the subject of Civil No. 01 CV 731, filed in Weld County District Court, Division 1. |
| 3 | Aggregate Industries, Inc. Larry Brookman 3605 S. Teller St. Lakewood, CO 80235 303-716-5247 | Paul G. Urtz Stutz, Miller & Urtz, LLC 1660 Lincoln, Suite 2850 Denver, Colorado 80264 303-861-1200 303-830-0115 Fax | Obligations due for purchase of aggregate, the claim for which is the subject of Civil No.01 CV 667, filed in Weld County District Court, Division 1. |

| 4 | American Pride Co-op<br>Glen Ross<br>55 West Bromley Lane<br>Brighton, CO<br>303-659-1230 | Brice Steele<br>Gaunt, Dirrim, Coover &<br>Steele, P.C.<br>25 South 4th<br>Brighton, CO 80601<br>303-659-3171<br>303-659-5053 Fax | Claim which is the<br>subject of Civil No.<br>01 CV 1275, filed in<br>Adams County<br>District Court,<br>Division A. |

and the following debtors (hereinafter collectively referred to as "Ademar"):

| Name of Debtor: | Counsel for Debtor |
| --- | --- |
| Ademar Enterprises, LLC<br>Ademar Ready Mix | Jonathan A. Goodman<br>Frascona, Joiner, Goodman and Greenstein, P.C.<br>4750 Table Mesa Drive<br>Boulder, CO 80305-5575<br>303-494-3000<br>303-494-6300 Fax |

and the following individuals ( hereinafter collectively referred to as the "Accommodating Parties"):

| Name of Accommodating Parties: | Counsel for Accommodating Parties: |
| --- | --- |
| Francisco Martinez<br>12632 East Frontage Road & I-25<br>Longmont, CO 80504 | Jonathan A. Goodman<br>Frascona, Joiner, Goodman and<br>Greenstein, P.C.<br>4750 Table Mesa Drive<br>Boulder, CO 80305-5575<br>303-494-3000<br>303-494-6300 Fax |
| Fernando Martinez<br>3508 Empire<br>Evans, CO 80620 | |
| Maclovio Martinez<br>RR1 Box 133<br>San Acacio, CO 81151 | |

all of the foregoing parties to this Settlement Agreement are hereinafter collectively referred to as the "Parties."

**I.     RECITALS.**

A.     Each of the Creditors has filed separate civil actions in Colorado District Courts against Ademar to collect the payment for product sold and delivered to Ademar Ready Mix. The separate civil actions are described above.

B.     Ademar is no longer in business and the amount of its liabilities exceeds its assets.

*Settlement Agreement, Page 2 of 14 pages.*

C.   Mountain Cement Company and Aggregate Industries have named some or all of the Accommodating Parties as defendants in the civil actions filed by them. Both creditors have filed claims against the Accommodating Parties seeking to hold them liable for the obligations incurred by Ademar.

D.   American Pride Co-op had filed a suit and obtained a judgment against Ademar and one of the Accommodating Parties, Francisco Martinez.

E.   The Accommodating Parties owned real property in Weld County, Colorado (the "Property" which is more fully described in Paragraph 3.00 below), where Ademar Ready Mix operated its ready mix business.   One of the Accommodating Parties, Fernando Martinez, has sold his interest in Property in consideration of the releases provided to him under this Settlement Agreement and in consideration of his receipt of a $300,000.00 non-recourse promissory note, to be secured a deed of trust having a lien priority junior to the Deed of Trust which is more fully described in Paragraph 3.00 below.

F.   Ademar desires to stop litigation brought against it and its shareholders.

G.   The Accommodating Parties desire to stop litigation against them. Francisco Martinez and Maclovio Martinez, as the two remaining owners of Property, are willing to execute and deliver a non-recourse promissory note in favor of the Four Large Creditors, secured by a deed of trust encumbering the property located in Weld County, Colorado, in exchange for a dismissal of the lawsuits described in rows 1-4 of the Chart Identifying Liability and in exchange of American Pride Co-op releasing its judgment lien, but not the judgment, against the one-third interest of Francisco Martinez in the same Weld County property.

## II.   SETTLEMENT AGREEMENT.

For and in consideration of the RECITALS, the mutual covenants and agreements herein contained, and other good and valuable consideration, the sufficiency and receipt of which are hereby admitted, the Parties agree as follows:

1.00   The Four Large Creditors agree to accept as settlement in full of all obligations owed to them by Ademar and the Accommodating Parties the following amounts, and Francisco Martinez and Maclovio Martinez agree to grant a non-recourse promissory note secured by a deed of trust, as satisfaction of such amounts:

1.01   The agreed Settlement  Amount, and the corresponding percentage of the total amount owed to each Creditor is as follows:

| Name of Creditor | Settlement Amount | Pro -Rata % of Total Amount Due |
|---|---|---|
| Mountain Cement Company | $286,000.00 | 44.55% |

*Settlement Agreement, Page 3 of 14 pages.*

| Cemex, Inc. | $112,000.00 | 17.45% |
|---|---|---|
| Aggregate Industries, Inc. | $183,000.00 | 28.50% |
| American Pride Co-op | $61,000.00 | 9.50% |
| TOTALS | $642,000.00 | 100.00% |

1.02   Through and including December 31, 2004, the Settlement Amounts above shall not bear interest. On and after January 1, 2005, the Settlement Amounts shall bear interest at the rate provided for in the Promissory Note defined below . The foregoing Total Amount Due plus interest is hereinafter referred to as the "Total Settlement Amount."

The Four Large Creditors may only seek to collect the Total Settlement Amount from the proceeds of the sale of the Property described in Paragraph 3.00 below.

2.00   Contemporaneously with the execution of this Settlement Agreement by the Parties and the satisfaction or waiver of any contingencies identified below, Francisco Martinez and Maclovio Martinez agree to execute and deliver to the Four Large Creditors a single non-recourse promissory note for the Total Settlement Amount in the form annexed as Exhibit A (the "Promissory Note").

3.00   Within ten days after execution of this Settlement Agreement by the Parties and the satisfaction or waiver of any contingencies identified below, Francisco Martinez and Maclovio Martinez agree to execute and deliver to the Four Large Creditors a good and sufficient deed of trust (the "Deed of Trust") securing repayment of the Promissory Note in the form annexed as Exhibit B, covering the following described real property:

That portion of the West Half of Section 35, Township 3 North, Range 68 West of the 6th P.M., Weld County, Colorado, more particularly described as follows:

Considering the West line of the Northwest Quarter of said Section 35 as bearing North 00 degrees 45'36" West, and with all bearings contained herein relative thereto:

Beginning on the West line of the Northwest Quarter of said Section 35 from which he Northwest corner of said Section 35 bears North 00 degrees 45'36" West, 3231.37 feet; thence South 88 degrees 29'19" East, 180.92 feet; thence North 00 degrees 02'00" West, 379.20 feet; thence North 88 degrees 22'18" East, 185.84 feet; thence North 00 degrees 46'59" West, 172.50 feet; thence North 83 degrees 03'01" East, 590.67 feet; thence North 04 degrees 07 '35" West, 264.07 feet; thence North 89 degrees 41'07" East, 1708.18 feet to the North-South centerline of said Section 35; thence along said line, North 00 degrees 31'47" West, 2357.60 feet to the North Quarter corner of said Section 35; thence along the North line of the Northwest Quarter of said Section 35, South 89 degrees 31'30" West, 1,411.94 feet; thence South 00 degrees 46'36" East, 1247.10 feet; thence South 89 degrees 31'30" West,

*Settlement Agreement, Page 4 of 14 pages.*

1249.70 feet to said West line of the Northwest Quarter of Section 35; thence along said West line, South 00 degrees 46'36" East, 1984.27 feet to the point of beginning.

The above described Tract 3 contains 117.64 Acres, more or less. Subject to a County Road right of way 30 feet of even width along the entire West and North sides of the above described Tract 3. Subject to any other easements or rights of way as described by instruments of record or as now existing on said described Tract 3.

Also commonly known as 12632 and/or 12832 East Frontage Road, Longmont, CO 80501.

This property not constituting the homestead of Grantors or any of them, together with all improvements now or hereafter erected on the property, and all rights, easements, appurtenances, rents, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions, shall be deemed to be and remain a part of the property covered by this Deed of Trust, and all of the foregoing, together with the above described property are referred to in this Deed of Trust as the "Property."

    4.00    So long as any such action does not otherwise create default under the Note or Deed of Trust, Francisco Martinez and Maclovio Martinez may encumber all or a portion of the Property with one or more consensual liens which are in all respects junior to the interests of the Deed of Trust, or may sell a portion of the Property subject to the terms and conditions of Paragraph 26 of the Deed of Trust, and/or may encumber all or a portion of the Property subject to the terms and conditions of Paragraph 27 of the Deed of Trust.

    5.00    Francisco Martinez and Maclovio Martinez warrant that the following are the only encumbrances against the Property at the time of executing this Settlement Agreement:

| Name of Creditor | Security Document | Initial Secured obligation |
|---|---|---|
| Heritage Bank Lafayette State Bank of Lafayette 811 South Public Road Lafayette, CO 80026-2127 | Deed of Trust from El Hornito, Inc., Francisco Martinez, Fernando Martinez, and Maclovio Martinez dated July 11, 1997, and recorded with the Weld County Clerk and Ex-Officio Registrar of Deeds as 2558433 B-1616 P-643 on July 17, 1997, and a second Deed of Trust granted to Heritage Bank of Lafayette, Colorado on December 31, 1998, and recorded with the Weld County Clerk and Ex-Officio Registrar of Deeds as 2665474 on January 7, 1999. | $353,672.00 |

| Name of Creditor | Security Document | Initial Secured obligation |
|---|---|---|
| Heritage Bank-Lafayette 811 South Public Road Lafayette, CO 800026-2127. | Loan to Ademar Construction, Francisco Martinez, Fernando Martinez, and Maclovio Martinez (Loan No. 111927-01) | $150,000.00 |
| **American Pride Co-op\*** | **Judgment from Civil Action No. 01CV1275, filed in Division A of the District Court, Adams County, captioned *American Pride Co-op v. Ademar Construction Company/Ademar Ready Mix and Francisco M. Martinez.*** | **$61,628.73 plus interest at 8% from July 7, 2001, until paid.** |

**\*This lien is to be released by American Pride Co-op's entering into this Settlement Agreement.**

6.00    The Four Large Creditors agree that their relationship shall be governed as follows:

6.01    In the event that any action is required to be taken by the Four Large Creditors, it is agreed that such action shall be taken by the affirmative vote of Mountain Cement Company and one other member of the Four Large Creditors;

6.02    In the event that any payment is required to be made by the Four Large Creditors to preserve their security interest in the Property, the Four Large Creditors shall promptly confer with each other to determine whether such payment should be made. If the Four Large Creditors decide to make such payment in accordance with the provisions of Paragraph 6.01, their contributions toward the payments shall be in the percentage amount set forth in Paragraph 1.01. However, if any member of the Four Large Creditors does not make the required contribution, then that creditor's share may be paid in whole or in part by one or more of the other Large Creditors, in which event the contributing and non-contributing creditors' rights to receive payment shall be adjusted as follows:

6.02.a    Contributing Creditors shall be entitled be reimbursed in full for all advances and to receive all interest collected from Debtor as provided in the Deed of Trust which shall be allocated based upon the amounts actually advanced by the respective contributing Creditors before any sums are distributed to the Four Large Creditors as provided herein; or,

6.02.b    If for any reason a contributing Creditor fails to receive reimbursement in full or the full rate of interest at 15% per annum from Debtor on any such advances made to protect the security of the

*Settlement Agreement. Page 6 of 14 pages.*

Deed of Trust, the difference between the amount of interest actually paid by the Debtor and that permitted to be collected under the Deed of Trust shall be first paid to the contributing Creditors from any sums paid by, or collected from, Debtors before any sums are distributed to the Four Large Creditors as provided herein. In no event shall a non-contributing Creditor receive any distribution made on account of this Settlement Agreement until the contributing Creditors have been paid in full all sums advanced by them, together with interest on those advances at the rate of 15% per annum.

It is the intent of this paragraph, and the Agreement of the Parties, that (1) no distributions shall be made to the Creditors under Paragraph 6.05, until the contributing Creditors have been paid in full all sums advanced by them to protect the security of the Deed of Trust together with interest on sums advanced by them at the rate of 15% per annum, and (2) as between the Four Large Creditors, the only recourse available to a contributing Creditor is to demand first payment from any sums recovered from Debtor under this Settlement Agreement;

6.02.c Notwithstanding any provision to the contrary, each of the Four Large Creditors shall retain the right to determine, at its sole discretion, whether to make any payment or other contribution that is required to preserve the Four Large Creditors' security interest in the Property. If any member of the Four Large Creditors does not make a required contribution for any reason, that Creditor shall not be held liable by the other Creditors for any loss or damage that any of the other Creditors may suffer due to the non-contributing Creditor's failure to make a payment or contribution.

6.03     It is expressly understood by and among the Four Large Creditors that they shall share pro-rata in any payments paid to the Four Large Creditors in accordance with Paragraph 1.00;

6.04     Any payments to the Four Large Creditors under this Settlement Agreement shall be made as follows:

To the Anthony, Nicholas, Tangeman & Yates, LLC, Trust Account for the benefit of Mountain Cement Company, Cemex, Inc., Aggregate Industries, Inc., and American Pride Co-op [the Four Large Creditors] as provided in the Settlement Agreement dated as of March ___, 2003;

*Settlement Agreement, Page 7 of 14 pages.*

6.05   The law firm of Anthony, Nicholas, Tangeman & Yates, LLC, is directed to distribute any funds collected as a result of this Settlement Agreement to the Four Large Creditors as follows:

6.05.a First, payments shall be made to the Contributing Creditors as provided in Paragraph 6.02; and

6.05.b Second, any remaining amounts shall be distributed in the percentages agreed to by the Parties in Paragraph 1.01.

The law firm shall provide to the Four Large Creditors and their attorneys an accounting of any amounts received and paid out by them; and

6.06   The Parties agree that the interests of the Four Large Creditors may be freely transferred or assigned to each other. The Parties further agree that the Four Large Creditors may transfer or assign their interest to any third-party, provided that the third-party has first provided written assurances to all of the other Large Creditors (or their successors in interest) and to Francisco Martinez and Maclovio Martinez, that the third-party agrees to be bound by all of the terms and conditions of this Settlement Agreement, the non-recourse promissory note and the deed of trust securing the non-recourse promissory note.

7.00   Mountain Cement Company, Cemex, Inc. and Aggregate Industries, Inc. agree to dismiss with prejudice the civil actions filed by each of them against Ademar and the Accommodating Parties as described above, and they do hereby direct their respective counsel of record to stipulate to the entry of an order dismissing with prejudice all remaining claims raised or which could have been raised in those four civil actions identified in Column C of the Chart Identifying Liability above, all within ten days after the execution of this Settlement Agreement. American Pride Co-op shall release its judgment lien in Adams Count District Court Case No. 01 CV 1275 against the undivided interest of Francisco Martinez contemporaneously with the execution of this Settlement Agreement. Contemporaneously with the execution of this Settlement Agreement, American Pride Co-op shall modify the settlement agreement executed by American Pride Co-op on January 22, 2002 resolving the claims which were the subject of Case No. 01 CV 1275 filed in Adams County District Court through the execution of the Modification of Settlement Agreement, attached hereto as Exhibit C.

8.00   Except as otherwise provided herein, the Parties and the Accommodating Parties do hereby release, acquit, and forever discharge each other, and their predecessors, successors, subsidiaries, parent corporations, dealers, distributors, assigns and other affiliates, and all past and present agents, attorneys, officers, directors, employees, heirs, and representatives, from any and all actions, causes of action, demands, and damages, including but not limited to loss of business or loss of profits and expenses, including attorneys fees, whether arising by statute or common law, whether known or unknown at the present time, and whether resulting or to result from or based in any manner upon: (1) the facts and allegations made in the respective civil actions described above, and (2) the relationship of the Parties prior to the execution of this Settlement Agreement.

*Settlement Agreement, Page 8 of 14 pages.*

9.00   The Parties agree that the releases set forth herein are general releases, and each of them expressly waives and assumes the risk of any and all claims which it does not yet know of or suspect to exist, whether through ignorance, error, oversight, negligence or otherwise, and which, if known, would materially affect its decision to enter into this Settlement Agreement. The Parties understand and agree that this settlement is a compromise of disputed claims, and is not an admission or any acknowledgment of liability on the part of, or any legal infirmity in the position of, any party, which liability or legal infirmity is expressly denied.

10.00   Each of the Parties shall bear its or their own attorneys' fees and costs associated with the litigation in this matter.

11.00   In the event of litigation or consensual arbitration regarding this Settlement Agreement, the court or arbitrator shall award reasonable attorneys fees and costs to the prevailing party.

12.00   It is expressly understood and agreed that this Settlement Agreement contains the entire agreement between the Parties and shall be binding upon and inure to the benefit of their representatives, successors, and assigns.   The Parties declare and represent that no promise, inducement or agreement not expressed herein has been made to them.

13.00   The Parties hereby acknowledge receiving a copy of this Settlement Agreement before signing it, and that the undersigned, having read the Settlement Agreement and discussed it with their attorneys, understand it, and sign it as their own voluntary act and of their own free will and accord. The Parties understand and agree that the provisions of this Settlement Agreement are contractual and not merely recitals.

14.00   All warranties, covenants, agreements, undertakings, and releases contained herein shall survive this Settlement Agreement and the execution and delivery of the non-recourse promissory note and deed of trust.

15.00   If any provision of this Settlement Agreement is held to be illegal, invalid, or unenforceable, such provision shall be fully severable.

16.00   This Settlement Agreement shall not be modified or amended except by an instrument in writing signed by all of the Parties.

17.00   The validity, construction, interpretation, administration and enforcement of this Settlement Agreement shall be governed by the substantive laws of the State of Colorado.

18.00   This Settlement Agreement may be executed in counterparts by the Parties. Facsimile signatures shall be regarded as originals.

19.00 Subject to the following conditions, Francisco Martinez and Maclovio Martinez shall have the right, from time to time, to compel the Four Large Creditors to accept the conveyance of

*Settlement Agreement, Page 9 of 14 pages.*

one or more legally subdivided lots as credit against the amounts owed under this Settlement Agreement (hereinafter the "Put Rights of Francisco Martinez and Maclovio Martinez").

19.01 Lots shall be transferred to Four Largest Creditors individually, and free and clear of all liens and encumbrances;

19.02 Any lots transferred to the Four Large Creditors shall be legally subdivided in compliance with all local, county, and state subdivision laws and all subdivision improvements shall have been completed by Francisco Martinez and Maclovio Martinez. The lots shall be saleable by the Four Large Creditors;

19.03 The Parties shall attempt to agree on a value to be assigned to the lots. In the event that any of the Four Large Creditors and Francisco Martinez and Maclovio Martinez cannot agree upon the value of the lots or any particular lot within 30 days after the time Francisco Martinez and Maclovio Martinez propose in writing to exercise their rights under this provision, Francisco Martinez and Maclovio Martinez and the Four Large Creditors shall retain Russ Bowie as an appraiser (provided he has maintained his qualifications as an MAI or SRA certified appraiser) who will determine the value of the lot or lots at the point in time at which Francisco Martinez and Maclovio Martinez exercise their put rights under this provision. If Russ Bowie is no longer practicing as an appraiser, then the substitute appraiser shall be Don Kagy (provided he has maintained his qualifications as an MAI or SRA certified appraiser). If Don Kagy is no longer practicing as an appraiser, then Francisco Martinez and Maclovio Martinez and the Four Large Creditors shall mutually identify an MAI certified appraiser who will determine the value of the lots at the point in time at which Francisco Martinez and Maclovio Martinez exercise their put rights under this provision. In the event that the Four Large Creditors and Francisco Martinez and Maclovio Martinez cannot agree on a single appraiser within ten calendar days of the expiration of such 30 day period, then each of them shall select their own appraiser and those two appraisers shall select a third neutral appraiser. The fair market value of the lots which Francisco Martinez and Maclovio Martinez put to the Four Large Creditors shall be determined by averaging (1) the value adopted by the third neutral appraiser, with (2) the value adopted by the appraiser selected by one of the Parties which is closest in value to the third neutral appraiser's value.

20.00 This Settlement Agreement does not create a partnership between the Four Large Creditors, Fernando Martinez and Francisco Martinez and Maclovio Martinez. Without limiting the generality of the foregoing, the Four Large Creditors and Fernando Martinez shall not have the right to direct or interfere with the development, building upon or marketing of the Weld County Property.

[Balance of page left intentionally blank, signatures follow.]

*Settlement Agreement, Page 10 of 14 pages.*

Mountain Cement Company,
a Nevada corporation

Cemex, Inc.,
a Delaware corporation

By:_____
Its:_____
Dated:_____

By:_____
Its:_____
Dated:_____

Aggregate Industries., Inc.
a Colorado corporation

American Pride Co-op

By:_____
Its:_____
Dated:_____

By:_____
Its:_____
Dated:_____

Ademar Enterprises, LLC, also known as
Ademar Ready Mix

By: Francisco Martinez
Its: Manager
Dated: March 11, 2003

Francisco Martinez

Fernando Martinez

Maclovio Martinez

STATE OF COLORADO    )
                     ) ss.
COUNTY OF_____  )

     Subscribed and sworn to before me by _____, the
_____ of Mountain Cement Company, this ____ day
of March 2003.

     Witness my hand and official seal.

                                                  _____
                                                  Notary Public
My commission expires:_____


STATE OF COLORADO    )
                     ) ss.
COUNTY OF_____  )

     Subscribed and sworn to before me by _____, the
_____ of Cemex, Inc., this ____ day of March 2003.
     Witness my hand and official seal.

                                                  _____
                                                  Notary Public
My commission expires:_____


STATE OF COLORADO    )
                     ) ss.
COUNTY OF_____  )

     Subscribed and sworn to before me by _____, the
_____ of Aggregate Industries, Inc., this ____ day of
March 2003.

     Witness my hand and official seal.

                                                  _____
                                                  Notary Public
My commission expires:_____

STATE OF COLORADO )
)  ss.
COUNTY OF_____ )

Subscribed and sworn to before me by _____, the
_____ of American Pride Co-op, this _____ day of
March 2003.

Witness my hand and official seal.

_____
Notary Public

My commission expires:_____

STATE OF COLORADO )
)  ss.
COUNTY OF Denver )

Subscribed and sworn to before me by Francisco Martinez, the
manager of Ademar Enterprises, LLC, this 11th day of
March 2003.

Witness my hand and official seal.

JEAN L. MOFFETT

*Jean L. Moffett*
Notary Public

My Commission Expires March 28, 2003

My commission expires: 3/28/03

STATE OF COLORADO )
)  ss.
COUNTY OF Denver )

Subscribed and sworn to before me by Francisco Martinez, this 11th day of March 2003.
Witness my hand and official seal.

JEAN L. MOFFETT

*Jean L. Moffett*
Notary Public

My Commission Expires March 28, 2003

My commission expires: 3/28/0___

*Settlement Agreement, Page 13 of 14 pages.*

STATE OF COLORADO )
                 ) ss.
COUNTY OF _Denver_ )

Subscribed and sworn to before me by Fernando Martinez, this _11th_ day of March 2003.
Witness my hand and official seal.

My commission expires: _3/28/8_

_Jean L. Moffett_
Notary Public

STATE OF COLORADO )
                 ) ss.
COUNTY OF _Denver_ )

Subscribed and sworn to before me by Maclovio Martinez, this _11th_ day of March 2003.

Witness my hand and official seal.

My commission expires: _3/28/8_

_Jean L. Moffett_
Notary Public

*Settlement Agreement, Page 14 of 14 pages.*

2.17.10

Maclovio C. Martinez

12632 East Frontage Road

Longmont CO 80504


Dear Dad,

I Fernando Martinez hereby agree and shall be bound to release my deed of trust on the property commonly known as 12632 East Frontage Road, Longmont, Colorado 80504 upon confirmation of any Plan of Reorganization proposed by Maclovio C. Martinez in his bankruptcy case number 09-31045.


Sincerely

Fernando M. Martinez


2, 3

**EXHIBIT B**

2.17.10

Maclovio C. Martinez

12632 East Frontage Road

Longmont CO 80504


Dear Dad,

I Francisco Martinez hereby agree and shall be bound to release my deed of trust on the property commonly known as 12632 East Frontage Road, Longmont, Colorado 80504 upon confirmation of any Plan of Reorganization proposed by Maclovio C. Martinez in his bankruptcy case number 09-31045.


Sincerely,

Francisco M. Martinez


3 of 3

Exhibit C

## **EXHIBIT D**

Executory Contracts and Unexpired Leases Assumed

1.      All contracts and leases previously assumed or for which a motion to assume is pending.

2.      All leases and contracts not specifically rejected.

## **EXHIBIT E**

Executory Contracts and Unexpired Leases Rejected

1.      All leases and contracts previously rejected by Court Order.

2.